UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLADYS MARIE COBURN,

                      No. 13-13337

      Plaintiff,               District Judge Laurie J. Michelson

v.                              Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  the parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #14] be DENIED and that Plaintiff's Motion for Summary Judgment [Docket #9] be GRANTED to the extent that the case be remanded for further fact-finding for the period prior to her 50th birthday, and remanded for a calculation of benefits as of her 50th birthday.

**I.  PROCEDURAL HISTORY**

      On December 15, 2010, Plaintiff applied for DIB, alleging disability as of August 13,

2010 (Tr. 129-132). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on November 30, 2011 in Flint, Michigan before Administrative Law Judge ("ALJ") Joanne Adamczyk (Tr. 36). Plaintiff, represented by attorney Daniel Pollard, testified, (Tr. 41-63), as did vocational expert ("VE") Michele Robb (Tr. 63-66). On March 12, 2012, ALJ Adamczyk found Plaintiff not disabled (Tr. 31-32). On June 3, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on August 5, 2013.

## II. BACKGROUND FACTS

Plaintiff, born November 6, 1961, was 50 at the time of the administrative hearing and decision (Tr. 32, 129). She completed high school (Tr. 154) and worked previously as a packer, home health care aide, and postal sorter (Tr. 154). In her application for benefits, she alleges disability as a result of bilateral carpal tunnel syndrome ("CTS"), neck problems, and headaches (Tr. 153).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced the hearing by stating that his client had begun psychiatric treatment approximately six months prior to the hearing* (Tr. 39).

Plaintiff then offered the following testimony:

She currently lived in a rented house with her adult daughter (Tr. 41-42). She had not worked or attempted to find work since August, 2010 (Tr. 42). Her former employer

provided medical insurance and she received food stamps and sick leave pay (Tr. 42).

Plaintiff stopped working because of CTS, neck problems, headaches, and right rotator cuff problems (Tr. 43). She experienced some problems shampooing her hair and avoided clothes with zippers and buttons (Tr. 44). She held a driver's license but limited her driving to short distances (Tr. 44). She was able to prepare simple meals and perform limited laundry chores (Tr. 45). She used her computer rarely due to hand and wrist pain (Tr. 45). She slept in wrist splints prescribed by her physician (Tr. 45). Carpal tunnel release surgery had been recommended by one physician, but she was currently attempting to resolve the condition with conservative measures (Tr. 45-46). Her daughter generally accompanied her on grocery shopping trips, but she was able to make quick trips to the store on her own (Tr. 46). She did not perform any garden or yard work (Tr. 47). Her hobbies were limited to reading (Tr. 47). She read for 15 minutes each morning (Tr. 47). She seldom watched television (Tr. 47). She currently took Cymbalta, Vicodin, Neurontin, Depakote, Anaprox and Tramadol (Tr. 48). She began taking the pain medications in August, 2010 and began taking the psychotropic drugs five months earlier when she began psychiatric treatment (Tr. 48). She experienced the medication side effects of drowsiness and urinary urgency (Tr. 49). She regularly smoked three or four cigarettes a day, but on a "bad day" might smoke a half pack (Tr. 49). She took naps throughout the day (Tr. 51). She took care of two small dogs (Tr. 52). Plaintiff's mother visited two days a week and drove Plaintiff to church on Sunday (Tr. 52).

Plaintiff was unable to lift more than 10 pounds or sit, stand, or walk for more than 30 minutes at a time (Tr. 52). She was able to climb stairs on a limited basis (Tr. 53). She experienced problems with repeated bending (Tr. 53-54). She did not know whether she could crawl or crouch (Tr. 55). She did not require the use of a cane (Tr. 55). She described her shoulder pain as a feeling of "pressure" (Tr. 56). When using her hands for extended periods, her entire right arm became "tight" (Tr. 56). Her headaches had recently declined in frequency (Tr. 56). On a scale of one to ten, she rated her shoulder pain as a "five" at best and a "ten" at worst (Tr. 57-58). She had not sought emergency treatment for upper extremity problems but coped with the conditions by wearing splints and taking medication (Tr. 58). She experienced pain when performing repeated fine manipulative activities and reaching overhead (Tr. 59). Her upper extremity problems were exacerbated by cold weather (Tr. 60).

Plaintiff received a diagnosis of bipolar disorder in June, 2011 (Tr. 60). She did not experience problems getting along with others (Tr. 61). Since becoming disabled, she rarely socialized with individuals other than family members (Tr. 61-62). She was discouraged by her physical problems and had thoughts of harming herself before seeking psychiatric treatment in June, 2011 (Tr. 62). She derived comfort from talking to her mother, but felt self conscious in public places since becoming disabled (Tr. 62).

**B. Medical Records**

**1. Treating Sources**

In April, 2010, Abdullah Raffee, M.D. noted Plaintiff's reports of anxiety, but performed an otherwise unremarkable examination (Tr. 220). In June, 2010, Plaintiff was discharged from physical therapy after failing to attend any sessions (Tr. 209). Intake notes state that she exhibited an antalgic gait and reported significant hand and wrist pain both at rest and with activity (Tr. 207). The following month, Dr. Raffee noted that Plaintiff wanted to return to work, but imposed a lifting restriction of 10 pounds due to symptoms of CTS (Tr. 219). Dr. Raffee's August, 2010 treating notes state that Plaintiff reported "throbbing" right-sided migraine headaches and that the CTS was worsening (Tr. 218).

September, 2010 nerve conduction studies performed by neurologist A. Rayes, M.D. revealed mild bilateral CTS "more prominent on the right," and "[e]arly left ulnar sensory neuropathy" of the wrist, and arthralgia at the base of the left thumb (Tr. 188). Dr. Rayes recommended an evaluation by a hand surgeon (Tr. 188). Plaintiff reported level "ten" pain on a scale of one to ten, exacerbated by lifting, grabbing, and "pressure" (Tr. 192). She reported limited relief with the use of pain relievers (Tr. 192). Dr. Raffee noted bilateral swelling of the hands and wrists and Plaintiff's reports of "severe pain" (Tr. 217). Physical therapy notes from later the same month state that she experienced muscle spasms and radiating pain (Tr. 203). A physical therapy discharge summary completed the following month states that Plaintiff reported level "two" pain following therapy (Tr. 198). Her

"rehab" potential was deemed "fair" (Tr. 198). Dr. Raffee's notes from the following month state that Plaintiff had been prescribed wrist splints and continued therapy (Tr. 216). December, 2010 EMG studies show the presence of CTS, "right greater than left" (Tr. 227).

Dr. Raffee's January, 2011 treating records note muscle spasms in both shoulders (Tr. 213). The same month, hand surgeon Dong Wha Ohm, M.D. noted that aside from the diagnosis of bilateral CTS, Plaintiff experienced bursitis of the left shoulder (Tr. 233, 260). He opined that Plaintiff might benefit from carpal tunnel release on the right but that the left wrist would improve with conservative treatment (Tr. 233). The following month, Plaintiff sought emergency treatment for headaches and vomiting (Tr. 251). A CT scan of the head was unremarkable (Tr. 250). Dr. Raffee's March, 2011 records note that Plaintiff sought emergency treatment for headaches (Tr. 248). In May, 2011, Dr. Raffee observed continued "severe" swelling of the wrists and hands (Tr. 246).

The same month, Dr. Raffee noted Plaintiff's reports of depression and irritability and observed mild swelling of the wrists (Tr. 279-281). He referred her for psychiatric treatment (Tr. 281). July, 2011 intake notes by psychiatrist James Rhyee, M.D. note Plaintiff's report of insomnia, racing thoughts, poor concentration, anger, suicidal ideation, and recent alcohol abuse (Tr. 277). Dr. Rhyee prescribed Depakote and Neurontin for the mood disorder and Naltrexone to address the alcohol abuse (Tr. 274-277). He found that Plaintiff had an excellent prognosis (Tr. 277). Dr. Rhyee's records from later the same month state that Plaintiff experienced better sleeping patterns and fewer mood swings (Tr. 272). She reported

the side effect of drowsiness from Depakote and Neurontin (Tr. 271). In August, 2011, Dr. Raffee observed mild wrist swelling and positive Tinnel' and Phalen's signs (Tr. 282-283).

Plaintiff reported mood downswings and low energy in August and September, 2011 (Tr. 266-268). Dr. Rhyee's October and November, 2011 records state that she exhibited an improved affect but reported side effects of fatigue and incontinence as a result of Neurontin (Tr. 263-264). She reported that she no longer experienced side effects from Depakote after reducing her dosage (Tr. 262). She exhibited slow speech and a blunted affect (Tr. 262).

## 2. Non-Treating Sources

In April, 2011, Neil A. Friedman, M.D. examined Plaintiff on behalf of the SSA, noting Plaintiff's report of bilateral hand and shoulder pain and "right-sided headaches" (Tr. 239). He noted that her range of shoulder motion was limited due to "poor effort" (Tr. 240). She did not experience problems picking up a paperclip with either hand (Tr. 24). Dr. Friedman observed a normal gait and "no difficulty" arising from a sitting position (Tr. 240). He concluded that Plaintiff was capable of working full time "without restriction," citing the September, 2010 imaging studies stating that the CTS was "mild" (Tr. 241).

### C. Vocational Testimony

VE Michelle Robb classified Plaintiff's former work as a packer as exertionally light and unskilled; home health aide, medium/semiskilled; machine operator, light/unskilled; and

mail carrier, medium/unskilled[1] (Tr. 64). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [A]ssume a person . . . who's restricted to less than a full range of sedentary work. Can lift up to ten pounds occasionally and less than that frequently; can stand and walk two hours in an eight-hour workday and sit for up to six hours in an eight-hour workday, but with appropriate breaks, but would need a true sit/stand option about every 30 minutes; who cannot push or pull with the upper extremities; who cannot climb ladders, ropes or scaffolds; who can occasionally climb ramps or stairs; cannot crouch or crawl . . . cannot perform any overhead reaching with either upper extremity; must avoid extremes of cold, wetness and humidity, moving machinery and unprotected heights. Sinuses. And who would be limited to simple, routine, repetitive tasks with no production line or piecework. Could such a person perform the claimant's past work or any other work that exists in the regional economy? (Tr. 64-65).

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the sedentary, unskilled work of an information clerk (2,000 positions in the regional economy); general office clerk (2,800); and counter clerk (1,100) (Tr. 65). The VE testified that if the individual were additionally limited by "extreme fatigue as a result of the side effects of her medications and

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

because of pain, the fatigue and the combination of her impairments, cannot sustain an eight-hour workday . . . or equivalent work schedule on a regular and consistent basis," all work would be precluded (Tr. 65-66).

### D. The ALJ's Decision

Citing the medical records, ALJ Adamczyk found the severe impairments of "bilateral carpal tunnel syndrome, migraine headaches, depression, anxiety and a substance [ab]use disorder" but found that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25-26). She declined to find "bilateral rotator cuff tears" a severe impairment, noting "no confirmed diagnosis" of the condition (Tr. 26). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [T]he need for a sit/stand option about every 30 minutes; no pushing or pulling of more than 10 pounds with the upper extremities. The claimant cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs. She cannot crouch or crawl and must avoid moving machinery and unprotected heights. She cannot perform tasks that require overhead reaching. She is limited to simple, routine, repeptitive work with no production rate or pace work (Tr. 26).

The ALJ, noting Plaintiff's birth date of November 6, 1961, found that Plaintiff was "a younger individual" (age 45 to 49) on the alleged onset date of August 13, 2010 (Tr. 31, 129). Adopting the VE's testimony, the ALJ determined that while Plaintiff was unable to perform any of her former jobs, she could work as an information clerk, general office clerk, and a counter clerk (Tr. 31-32).

The ALJ discounted the allegations of disability, noting that Plaintiff had responded well to psychotropic medication (Tr. 29). The ALJ cited November, 2011 treating notes stating that medication side effects had resolved (Tr. 29). She observed that symptoms of CTS remained stable, despite one recommendation to undergo carpal tunnel release (Tr. 30).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Substantial Evidence

Plaintiff argues that the hypothetical question to the VE did not account for her full degree of impairment. *Plaintiff's Brief*, 7-11, *Docket #9* (citing Tr. 51). She contends that

the omission of critical upper extremity limitations from the hypothetical question invalidates the Step Five finding that she was capable of a significant range of sedentary work.[2] *Id.* at 7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Determination of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question depends in large part on whether her credibility determination and discussion of the medical records were supported by substantial evidence. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration

---

[2] Plaintiff's argument includes citation to case law holding that the opinion of a treating physician is entitled to deference. *Plaintiff's Brief* at 8-9. However, the record does not contain an opinion of disability by a treating source. Dr. Raffee found that Plaintiff was limited to lifting 10 pounds, and the ALJ included this limitation in the hypothetical question to the VE and the RFC (Tr. 26, 64).

of the entire case record."*Id.* [3]

At first glance, the credibility determination appears well articulated and supported. In discounting Plaintiff's claims, the ALJ cited an October, 2010 physical therapy discharge summary rating her pain at level "two" on a scale of one to ten (Tr. 27). She noted that September, 2010 diagnostic studies showed that the condition of CTS was "mild" (Tr. 27). The ALJ cited treating records stating that Plaintiff experienced some improvement with use of wrist splints (Tr. 27).

The ALJ noted that Dr. Friedman, a consultative source, observed in April, 2011 that Plaintiff "gave poor effort" during range of motion and grip strength testing (Tr. 28). She cited Dr. Friedman's finding that the September, 2010 diagnostic studies (showing mild CTS) were unaccompanied by other objective evidence of the condition (Tr. 28). She accorded "significant weight" to Dr. Friedman's conclusion that Plaintiff was capable of working full time "without restriction" (Tr. 28, 30). She noted that Plaintiff had not sought

---

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

emergency treatment for CTS and none of the treating or consultative sources found that Plaintiff was disabled from all work (Tr. 30). She found that CTS did not prevent Plaintiff from taking care of her personal needs, driving, preparing light meals, using a computer, shopping, and reading the Bible (Tr. 30).

Nonetheless, the ALJ's finding that Plaintiff was not credible is based in part on distortions, if not outright misstatements of the evidence. Plaintiff's October, 2010 statement that she experienced only level two wrist and hand pain at the time of the physical therapy discharge stands at odds with the later treating observations of "severe" hand and wrist swelling (Tr. 246) and positive Tinnel and Phalen's signs (Tr. 282-283). While the ALJ accorded "partial weight" to Dr. Raffee's findings (Tr. 31), her finding that Plaintiff did not undergo further diagnostic testing after the January, 2011 evaluation by Dr. Ohm (Tr. 30) is contradicted by Dr. Raffee's later diagnostic studies.

The ALJ's credibility determination is also undermined by the "significant" weight accorded Dr. Friedman's evaluation (Tr. 30). The ALJ cited Dr. Friedman's finding that the electro-diagnostic testing was limited to the September, 2010 studies showing mild CTS (Tr. 28, 241). However, Dr. Friedman either overlooked or was not aware of December, 2010 EMG studies showing the ongoing presence of CTS and the accompanying recommendation to pursue steroid injections and/or surgery if conservative measures were unsuccessful (Tr. 227). While Dr. Friedman claimed to have reviewed Plaintiff's medical records, he made no reference to either the December, 2010 studies or Dr. Ohm's January, 2011 recommendation

to consider carpal tunnel release on the right and the diagnosis of bursitis of the left shoulder (Tr. 233). Dr. Friedman attributed Plaintiff's tentative movements during range of shoulder motion and grip strength testing to "poor effort" (Tr. 240). However, Dr. Friedman's conclusion that Plaintiff was malingering (as opposed to moving hesitantly as a result of hand and shoulder pain) appear to be based at least in part on (1) his erroneous belief that the latest diagnostic studies were over seven months old and, (2) the failure to review Dr. Ohm's January, 2011 diagnoses and recommendations. In turn, the ALJ (also failing to note the December, 2010 studies) accorded significant weight to Dr. Friedman's conclusion, citing his findings that Plaintiff gave poor effort during the examination (Tr. 28).

Further, the ALJ's observation that Plaintiff was able to take care of personal needs, drive, prepare meals, and use a computer does not accurately summarize Plaintiff's account of her own abilities (Tr. 30). Plaintiff testified that she was unable to shampoo her hair due to overhead reaching limitations, consistent with Dr. Ohm's finding that she experienced bursitis in both shoulders (Tr. 44). Plaintiff stated that she could dress herself, but noted that she used slip on shoes and avoided wearing clothes with zippers or buttons because of hand and wrist limitations (Tr. 44). She testified that she seldom used her computer due to wrist pain (Tr. 45).

To be sure, the credibility determination is partially supported by the record. For example, the ALJ correctly noted that none of the medical sources opined that Plaintiff was incapable of all work. The ALJ's summation of the psychiatric records and her finding that

the mental conditions did not create disabling symptoms is also well supported and explained. However, the Court is unable to determine to what extent the erroneous findings colored the credible determination as well as the ultimate finding that Plaintiff was not disabled. An ALJ "must articulate . . . his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995). Here, the "path of reasoning" has been obscured by the ALJ's reliance on the erroneous findings by Dr. Friedman and the mischaracterization of Plaintiff's daily activities. In particular, the "significant" weight accorded Dr. Friedman's consultative findings casts doubt on the disability determination. The Court is unable to determine how the ALJ would have ruled absent her reliance on those findings. "To be entitled to substantial deference ... agency rulings must clearly articulate the rationale underlying the decision." *Bailey v. Commissioner of Social Sec.,* 173 F.3d 428, 1999 WL 96920, *3–4 (6th Cir. February 2, 1999) (citing *Hurst v. Secretary of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985)). At a minimum, the ALJ's reliance on Dr. Friedman's assessment warrants a remand for further fact-finding.

### B. Plaintiff's 50th Birthday

Although not addressed by either party, the Court notes that Plaintiff turned 50 on November 6, 2011. In her March 12, 2012 determination, the ALJ noted that Plaintiff was a "younger individual" (age 45-49) at the time of August 13, 2010 alleged onset of disability

(Tr. 23, 31).  Citing Medical-Vocational Rule 201.21, the ALJ found that Plaintiff's high school education, ability to communicate in English, her status as a younger individual, and ability to perform sedentary work directed a finding of "not disabled" through the date of the determination (Tr. 32).  However, the ALJ failed to note that as of Plaintiff's 50th birthday, she was no longer classified as a younger individual but rather, "closely approaching advanced age." 20 C.F.R. part 404, subpart P, App. 2.   Under Medical-Vocational Rule 201.14, an individual closely approaching advanced age with a high school education, no transferrable skills, and a limitation to sedentary work generally directs a finding of disability.  *Id. "*Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."
20 C.F.R. part 404, subpart P, App. 2.

While the ALJ notes that Plaintiff was a "younger individual" on the alleged onset date, her finding that Plaintiff does not possess transferrable skills, combined with the finding that she was restricted to sedentary work, directs an award of benefits as of her 50th birthday. To be sure, a sedentary/no transferrable skills finding would not entitle a claimant to benefits if she had not turned 50 until *after* the date of the administrative opinion. *See Layman v. Commissioner of Social Sec.* 2009 WL 929922, *1, fn 1 (E.D.Mich. October 6, 2009)(Ludington, J.).  However, here, Plaintiff turned 50 over four months *before* the

administrative determination and would thus be entitled to an award of benefits going forward from that date. *See Norwood v. Secretary of Health and Human Services,* 1993 WL 122102, *3 (April 20, 1993)(while Plaintiff not entitled to benefits prior to her 50th birthday due to ability to perform sedentary work, restriction to sedentary work, combined with lack of transferrable skills, directed award of benefits as of age 50); *Saxon v. Colvin,* 2013 WL 4051037, *3 (D.S.C. August 9, 2013). 20 C.F.R. part 404, subpart P, App. 2 states that a finding of disability "ordinarily obtains." In this case, the ALJ has provided no rationale for why the general rule would not apply.[4]

For these reasons, a remand is required. The errors in the credibility determination, while critical, do not establish an "overwhelming" case for benefits prior to Plaintiff's 50th birthday. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th

---

[4] Counsel's failure to raise the issue does not preclude this Court's review. In *Wright v. Comm. of Soc. Sec.*, 2010 WL 5420990, *3 (E.D. Mich. 2010)(Friedman, J.), the Court, citing *Kenney v. Heckler*, 577 F.Supp. 214 (N.D. Ohio 1983), held as follows:

> "[T]his Court holds that a complaint filed pursuant to 42 U.S.C. § 405(g) appealing the Secretary's final decision denying Social Security disability benefits, may not be dismissed for failure of the plaintiff to prosecute when the plaintiff fails to file a summary judgment motion as requested by the Magistrate....Stated another way, once the plaintiff has filed a complaint stating his grounds for appeal from the Secretary's decision, he has done all that is required of him by § 405(g)."

Even though the plaintiff in *Wright* had not filed a brief, the Court went on to review the record on the merits, and remanded the case for an award of benefits. Likewise in the present case, the Court may *sua sponte* grant summary judgment to Plaintiff on this issue, even though it was not raised in her brief.

Cir.1994). On this issue, a remand for further fact-finding is appropriate.

In contrast, a "judicial award of benefits is proper . . . where the proof of disability is strong and evidence to the contrary is lacking." *Id.* The ALJ's own finding that Plaintiff was restricted to sedentary work and did not possess transferrable skills directs a finding of disability as of her 50th birthday. As such, a remand for a calculation of benefits as of Plaintiff's 50th birthday is appropriate.

Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this Report and Recommendation.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further fact-finding for the period prior to her 50th birthday and remanded for a calculation of benefits as of her 50th birthday.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                                s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 18, 2014, electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager to the
                                                Honorable R. Steven Whalen